Approved: _____
KEDAR S. BHATIA / REBECCA T. DELL / DEREK WIKSTROM
Assistant United States Attorneys

Before: THE HONORABLE STEWART D. AARON
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

 - v. -

DELILAH CUMMINGS,

               Defendant.

- - - - - - - - - - - - - - - - - - x

**22 MAG 9611**

<u>SEALED COMPLAINT</u>

Violation of
18 U.S.C. §§ 1343 and 2

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

LAVALE JACKSON, being duly sworn, deposes and says that he is a Special Agent with the United States Attorney's Office for the Southern District of New York, and charges as follows:

<u>**COUNT ONE**</u>
**(Wire Fraud)**

1. In or about July 2020, in the Southern District of New York and elsewhere, DELILAH CUMMINGS, the defendant, knowingly and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, CUMMINGS engaged in a scheme to obtain funds from the United States Small Business Administration ("SBA") through the SBA's Economic Injury Disaster Loan ("EIDL") Program, by submitting a false and fraudulent loan application.

(Title 18, United States Code, Sections 1343 and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

2. I am a Special Agent with the United States Attorney's Office for the Southern District of New York ("USAO-SDNY"), and have been in that position for over eight years. Before joining the USAO-SDNY, I was a Special Agent with the United States Department of Labor – Office of Inspector General for more than nine years. In both of these capacities, I have participated in numerous criminal investigations, including investigations into fraud and public corruption.

3. This case arises from an investigation the USAO-SDNY, the Internal Revenue Service – Criminal Investigations ("IRS-CI"), and the SBA's Office of Inspector General ("SBA-OIG"), have been conducting into public employees who submitted or caused to be submitted fraudulent applications for SBA loans related to the COVID-19 pandemic. I have been personally involved in that investigation. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with other law enforcement officers, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my participation in the investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Overview

4. At all times relevant to this Complaint, DELILAH CUMMINGS, the defendant, was employed by the New York City Department of Education ("NYC DOE").

5. In or about July 2020, DELILAH CUMMINGS, the defendant, engaged in a scheme to defraud the SBA and enrich herself, by applying for an EIDL on behalf of a sole proprietorship in her own name that purportedly provided hair and nail salon services. CUMMINGS's EIDL application contained materially false representations about her purported sole proprietorship. Based on that fraudulent application, the SBA issued an EIDL to CUMMINGS in the amount of $150,000.

## The SBA's EIDL Program

6. Based on my training and experience, my review of information from the SBA's website, my review of information received from the SBA, and my communications with SBA employees, I know that:

2

    a. The SBA is a federal agency that administers assistance to American small businesses. This assistance includes issuing certain loans, and guaranteeing loans issued by certain lenders, to qualifying small businesses. As relevant here, this assistance includes making direct loans to applicants through the EIDL program.

    b. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted on March 29, 2020, designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. Among other things, the CARES Act expanded the SBA's EIDL program, which provided small businesses with low-interest loans of up to $2 million prior to in or about May 2020, and up to $150,000 between in or about May 2020 and in or about December 2021, in order to provide vital economic support to help overcome the loss of revenue small businesses experienced due to COVID-19. These loans were made directly by the SBA.

    c. To qualify for an EIDL under the CARES Act, an applicant had to have suffered "substantial economic injury" from COVID-19, based on an actual economic injury determined by the SBA. EIDLs could only be used for certain specified purposes, such as for payroll and other similar costs, increased costs due to supply chain interruption, to pay obligations that could not be met due to revenue loss, and for other similar uses.

    d. The CARES Act also permitted applications to request an advance of up to $10,000 to pay allowable working capital needs. Advances were expected to be paid by the SBA within three days of the submission of an EIDL application to the SBA, provided the application contained a self-certification under penalty of perjury of the applicant's eligibility for an EIDL.

    e. Individuals were permitted to submit EIDL applications electronically through the SBA's website, which recorded various information about the application and applicant. Applicants received email notifications at various points in the application process, including, if applicable, when the SBA extended an offer and when the SBA approved the loan.

### CUMMINGS's Fraudulent EIDL Application

  7. Based on my review of records received from the SBA, I have learned, among other things, the following:

    a. On or about July 16, 2020, an EIDL application was submitted to the SBA, seeking an EIDL for a sole proprietorship

under the name "Delilah Cummings" (the "CUMMINGS EIDL Application").

      b.    The CUMMINGS EIDL Application contained a certification under penalty of perjury that its contents were "true and correct."

      c.    The CUMMINGS EIDL Application claimed that the "Delilah Cummings" sole proprietorship was 100% owned by DELILAH CUMMINGS, the defendant.[1]

      d.    The CUMMINGS EIDL Application claimed, among other things, that the "Delilah Cummings" sole proprietorship was established on March 1, 2016, was a "Hair & Nail Salon,"[2] had 45 employees, earned $498,800.00 in gross revenues during the 12-month period ending January 31, 2020, and incurred $97,000.00 in cost of goods sold during the 12-month period ending January 31, 2020.

      e.    The CUMMINGS EIDL Application directed that the loan payment be sent to a certain account in CUMMINGS's name (the "CUMMINGS Checking Account") at a certain financial institution ("Financial Institution-1").[3]

      f.    The CUMMINGS EIDL Application listed a certain email address, and was submitted from an Internet Protocol ("IP") Address, both of which, based on my involvement in this

---

[1] The social security number, date of birth, and street address listed for DELILAH CUMMINGS, the defendant, on the CUMMINGS EIDL Application were the same as the social security number, date of birth, and street address associated with CUMMINGS's bank accounts, tax returns, and Cash App account, all discussed below, and are also consistent with the information for CUMMINGS contained in a public records database frequently used by law enforcement.
[2] Based on my review of records from the New York Department of State, I have learned that DELILAH CUMMINGS, the defendant, was licensed by the State of New York as a cosmetologist between at least in or about August 2016 and in or about August 2020, and again beginning in or about January 2021.
[3] Based on my review of publicly available information, I have learned that Financial Institution-1 is a credit union for which only certain categories of individuals are eligible to open accounts, including but not limited to employees of the City of New York, and Financial Institution-1 requires proof of eligibility in order to open an account.

4

investigation, I do not believe are connected to DELILAH CUMMINGS, the defendant.

        g.  On or about July 18, 2020, the SBA approved the CUMMINGS EIDL Application, and issued a payment to the CUMMINGS Checking Account in the amount of $150,000.

8.  Based on my review of records from Financial Institution-1, I have learned, among other things, the following:

        a.  In or about May 2019, DELILAH CUMMINGS, the defendant, opened the CUMMINGS Checking Account and a connected savings account (the "CUMMINGS Savings Account," and collectively the "CUMMINGS Financial Institution-1 Accounts"). Financial Institution-1's files for the CUMMINGS Financial Institution-1 Accounts include a copy of CUMMINGS's New York State driver's license.

        b.  The CUMMINGS Checking Account regularly received payments labeled "payroll" from the City of New York.

        c.  On or about July 21, 2020, the CUMMINGS Checking Account received an Automated Clearing House ("ACH") transfer from the SBA in the amount of $149,900.00.[4] Immediately before receiving this transfer, the balance in the CUMMINGS Checking Account was $3.21.

        d.  On or about July 21, 2020, $146,000 was transferred from the CUMMINGS Checking Account to the CUMMINGS Savings Account, which Financial Institution-1's records indicate was a "Mobile Transfer." Immediately before receiving this transfer, the balance in the CUMMINGS Savings Account was $5.00.

        e.  Statements for the CUMMINGS Financial Institution-1 Accounts indicate that the SBA EIDL proceeds were spent on, among other things, a trip to Las Vegas, Nevada, multiple large purchases at retailers including Apple, Louis Vuitton, Polo Ralph Lauren, Macys, and Canada Goose, transfers to investment accounts, and multiple large payments to an auto loan servicing company. Those records do not indicate that the SBA EIDL proceeds were used for expenditures consistent with running a hair and nail salon, such as commercial rent or the purchasing of supplies.

---

[4] Based on my review of information from the SBA's website about the EIDL program, I know that for EIDLs greater than $25,000, the SBA charged a one-time $100 fee in order to file a lien on the borrower's business assets.

5

   f. Statements for the CUMMINGS Financial Institution-1 Accounts reflect that during the period beginning when she opened the accounts in or about May 2019, and ending January 31, 2020, CUMMINGS's principal source of earnings was her job with the NYC DOE. Statements for the CUMMINGS Financial Institution-1 Accounts do not reflect any other significant deposits prior to January 31, 2020, and are therefore not consistent with the operation of a sole proprietorship that purportedly earned approximately $500,000 in revenue during the 12 months prior to January 31, 2020.

  9. Based on my communications with employees of Financial Institution-1, I have learned, among other things, that Financial Institution-1 is headquartered in Manhattan, New York, and that during the relevant period, when ACH transfers were sent to accounts at Financial Institution-1, Financial Institution-1's process of reviewing batches of those ACH transfers and disbursing them into the destination accounts involved the transmission of wire communications between Manhattan and servers located in New Jersey.

  10. Based on my review of tax filings for DELILAH CUMMINGS, the defendant, I know, among other things, that the only income she reported to the Internal Revenue Service ("IRS") for tax year 2019 was her salary from the NYC DOE, and that CUMMINGS did not report any income from, or file a Schedule C, Profit or Loss from Business Form, for any sole proprietorship in her name.

  11. Based on my review of records from the New York State Department of Labor ("NYS DOL"), I have learned that the NYS DOL does not have records that DELILAH CUMMINGS, the defendant, or any sole proprietorship using her name in New York State, had any employees or paid any wages to employees during 2019 or 2020, contrary to CUMMINGS's claim in the CUMMINGS EIDL Application that her business employed 45 people.

  12. Based on my review of records from the mobile payments application Cash App, I have learned, among other things, the following:

   a. DELILAH CUMMINGS, the defendant, has an account on Cash App (the "CUMMINGS Cash App Account").

   b. One of the payment sources for the CUMMINGS Cash App Account is a debit card associated with the CUMMINGS Checking Account.

   c. The CUMMINGS Cash App Account made a series of attempted and actual payments, and received certain payment

requests, from a Cash App account in the name "Brian Mohammed." In total, the CUMMINGS Cash App Account paid a total of $6,000 to Mohammed in the days after receiving the EIDL proceeds discussed above. Based on my review of records from Financial Institution-1, I know that each of the completed payments discussed below were withdrawn from the CUMMINGS Checking Account, and were funded using proceeds from the EIDL. The payments and requests between CUMMINGS and Mohammed included, among others, the following:

        i. On or about July 21, 2020, CUMMINGS paid Mohammed $2,500;

        ii. On or about July 23, 2020, CUMMINGS paid Mohammed $500;

        iii. On or about July 25, 2020, Mohammed sent CUMMINGS a request for $2,500 with the memo "Application," and this request was declined with the message "AMOUNT_EXCEEDED_WEEKLY_TRANSACTION_LIMIT";

        iv. On or about July 27, 2020 Mohammed sent CUMMINGS a request for $2,500 with the memo "balance $3,000.00," and this request was declined with the message "AMOUNT_EXCEEDED_WEEKLY_TRANSACTION_LIMIT";

        v. On or about July 28, 2020, CUMMINGS paid Mohammed $2,500;

        vi. On or about July 29, 2020, CUMMINGS paid Mohammed $500, with the memo "thank you again."

7

WHEREFORE, deponent respectfully requests that a warrant issue for the arrest of DELILAH CUMMINGS, the defendant, and that she be imprisoned or bailed, as the case may be.

/s/ LaVale Jackson, with permission by SDA
LaVale Jackson
Special Agent
United States Attorney's Office for the
Southern District of New York

Sworn to me through the transmission of this
Complaint by reliable electronic means, pursuant to
Federal Rule of Criminal Procedure 4.1, this
29th day of November 2022.

THE HONORABLE STEWART D. AARON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

8