

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 29, 2023

**BY ECF**
The Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    ***United States v. Delilah Cummings*, 23 Cr. 214 (ER)**

Dear Judge Ramos:

    The Government respectfully submits this letter in advance of the sentencing of defendant Delilah Cummings.

    Cummings, while employed as a substitute paraprofessional by the New York City Department of Education ("DOE"), submitted a fraudulent application for COVID-19 benefits, exploiting a global health crisis for her own personal gain. This crime is a serious one, and there is a substantial need for the sentence imposed in this case to send a message of general deterrence. However, as set forth below, there are also meaningful mitigating circumstances present in this case that call for leniency.

    The parties have stipulated to an applicable range under the United States Sentencing Guidelines of 10 to 16 months' imprisonment. However, the Government recognizes that the Court may consider an anticipated change in the Guidelines that would grant the defendant a further two-level reduction, which would result in a Guidelines range of 6 to 12 month's imprisonment (the "Applied Guidelines Range"). For the reasons explained below, the Government respectfully submits that a sentence of two years' probation, including 12 months of home confinement, would be sufficient but not greater than necessary to achieve the purposes of sentencing in this case.

    A.    **Factual Background**

    On March 29, 2020—in the early days of the COVID-19 pandemic in the United States, as people across the country stopped going to work and retreated into their homes—the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was enacted. The CARES Act authorized the issuance of billions of dollars in forgivable loans to small businesses, so that they could retain and continue to pay their employees and fund certain other business expenses. These loans, issued by the United States Small Business Administration ("SBA") as part of the Economic Injury Disaster ("EIDL") program, were a lifeline for small businesses that otherwise would have been wiped out during the pandemic. Applicants qualified for an EIDL loan only if they had a business

that suffered "substantial economic injury" from COVID-19. Applicants could also request an advance of up to $10,000. Individuals submitted EIDL applications electronically through the SBA's website. Each application contained a certification under penalty of perjury that its contents were true and correct. (PSR[1] ¶¶ 7-10.)

On July 16, 2020, an EIDL application was submitted to the SBA under Cummings's name. Based on a review of Cummings' Cash App records, it appears that Cummings paid someone to prepare her application. The application stated that Cummings was the sole owner of a sole proprietorship in her own name. The application claimed that Cummings's sole proprietorship was in the "Hair & Nail Salon" business, had 45 employees, and earned $498,800 in gross revenues in the 12-month period ending on January 31, 2020. These claims were false. Cummings did not have a hair and nail salon business, did not employ 45 people, and did not earn $498,800 in gross revenues. Cummings's bank records show that, during 2019, Cummings received much less than $498,800 in deposits. Moreover, Cummings's tax filings reflect that, in tax year 2019, Cummings's only income came from her job with the DOE. In addition, records from the New York State Department of Labor revealed that neither Cummings nor any sole proprietorship in her name paid wages to employees in 2019 or 2020. (PSR ¶¶ 10-20.)

Despite these false statements, on July 18, 2020, the SBA approved a $150,000 loan for Cummings based on her false application. The loan was deposited in Cummings's checking account three days later, and before receiving it, Cummings had only $3.21 in her account. After receiving her loan, Cummings transferred the money to her savings account and, among other things, made multiple large purchases at luxury retailers. For example, she spent over $5,000 at Apple, over $3,000 at Louis Vuitton, over $2,000 at Polo Ralph Lauren, over $1,000 at Macys, over $1,000 at Canada Goose over $800 at Best Buy, and over $350 at Ugg. (PSR ¶¶ 14-15.)

### B. Procedural History and Guidelines Calculation

Cummings was charged by complaint with wire fraud November 29, 2022, and was arrested on November 30, 2022, as part of a coordinated takedown involving a total of 19 defendants charged with similar offenses.

On April 26, 2023, the Government filed Information 23 Cr. 214 (ER), which charged Cummings in one count with theft of government funds, in violation of 18 U.S.C. § 641. On May 15, 2023, Cummings pled guilty pursuant to a plea agreement dated May 15, 2023 (the "Plea Agreement").

In the Plea Agreement, the parties stipulated to a Guidelines range of 10 to 16 months' imprisonment. The offense level is 12: a base offense level of 6 under U.S.S.G. § 2B1.1(a)(2), with an eight-level increase under U.S.S.G. § 2B1.1(b)(1)(D) based on the loss amount of $150,000, and a two-level decrease for acceptance of responsibility. The defendant's criminal history category is I. The Probation Office agrees that this Guidelines calculation is correct, and

---

[1] PSR refers to the presentence investigation report in this case, which was revised on August 9, 2023. (ECF No. 25.)

it recommends a sentence of two years of probation, including three months of location monitoring. The defense requests the same sentence.

The Government notes that there is an anticipated Guidelines amendment in November 2023 that will provide a two-level decrease for certain zero-point offenders under a new U.S.S.G. § 4C1.1. The Government believes a two-level offense level reduction would be warranted in this matter under the proposed new Section 4C1.1 of the November 2023 version of the Sentencing Guidelines manual if it were in effect today. Accordingly, the Government respectfully requests that the Court sentence the defendant under Section 3553(a) as though the applicable Guidelines sentencing range is 6 to 12 months' imprisonment and the applicable Guidelines fine range is $4,000 to $40,000, as if these ranges were based on an offense level of 10 and Criminal History Category I.

### C. Discussion

#### 1. Applicable Law

The Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), and district courts are required to treat them as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49.

After calculating the Guidelines, the Court must consider seven factors: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the purposes of sentencing discussed in the next paragraph, (3) "the kinds of sentences available," (4) the Guidelines range itself, (5) any relevant policy statements by the Sentencing Commission, (6) "the need to avoid unwarranted sentence disparities among defendants," and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see also Gall*, 552 U.S. at 49-50 & n.6.

In determining the appropriate sentence, Section 3553(a) directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence for criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

#### 2. A Sentence of Two Years' Probation with 12 Months' Home Detention Is Appropriate in this Case

The Applied Guidelines Range appropriately accounts for the seriousness of Cummings's offense and the needs for deterrence and to promote respect for the law. In light of these factors, the Probation Office's recommendation of two years of supervision, with no home detention, is

too lenient. But Cummings presents certain unique mitigating factors, as a result of which the Government believes it is appropriate to impose a sentence of home detention rather than incarceration. Accordingly, the Government requests that a two-year term of probation, with the first 12 months to be served in home detention, be imposed.

*First*, there is a compelling need for a sentence to convey a message of general deterrence. *See* 18 U.S.C. § 3553(a)(2)(B). When the nation was in the throes of the unprecedented COVID-19 crisis, Congress established several programs to help individuals and businesses in dire need. These programs were meant to ameliorate the effects of a public health disaster that was killing thousands of Americans each day and would eventually kill more than a million Americans. *See Track COVID-19 in the U.S.*, N.Y. Times, https://www.nytimes.com/interactive/2023/us/covid-cases.html (updated July 2, 2023). In particular, with the EIDL program, Congress authorized the SBA to "make low-interest, fixed-rate, long-term . . . loans to overcome the effects of the pandemic by providing borrowers with working capital to meet ordinary and necessary operating expenses." *White Paper: COVID-19 Pandemic EIDL and PPP Loan Fraud Landscape* at 1, SBA-OIG (June 27, 2023), https://www.sba.gov/sites/sbagov/files/2023-06/SBA%20OIG%20Report%2023-09.pdf ("SBA-OIG Report"). Given the exigencies of the pandemic, the COVID-19 benefits programs were inundated with claims and felt urgency to make grants and loans available to people and businesses in need, which put taxpayers further at risk of loss. *Id.* at 3 ("As pandemic assistance programs swelled to more than $1 trillion, the risk to the taxpayer increased because SBA's internal control environment was calibrated to expedite loans and grants.").

Fraudsters like Cummings exploited the public health disaster and the Government's desire to make money quickly available to those in need. The SBA "disbursed over $200 billion in potentially fraudulent COVID-19 EIDLs, EIDL Targeted Advances, Supplemental Targeted Advances, and PPP loans. This means at least 17 percent of all COVID-19 EIDL and PPP funds were disbursed to potentially fraudulent actors." SBA-OIG Report, Exec. Summary; *see also* Richard Lardner, Jennifer Mcdermott & Aaron Kessler, *The Great Grift: How Billions In COVID-19 Relief Aid Was Stolen Or Wasted*, AP (June 12, 2023), https://apnews.com/article/pandemic-fraud-waste-billions-small-business-labor-fb1d9a9eb24857efbe4611344311ae78 ("An Associated Press analysis found that fraudsters potentially stole more than $280 billion in COVID-19 relief funding; another $123 billion was wasted or misspent."). Given the nature of the fraud, the defendant's crime was hard to detect and prosecute. The public has twice had to bear the burden of Cummings's fraud: taxpayers carried the risk when she obtained a taxpayer-backed loan through her lies, and then taxpayers spent money to investigate and prosecute her for those lies.

All told, there is a substantial need for a sentence that will convey a message of general deterrence. *See United States v. Zukerman*, 897 F.3d 423, 429 (2d Cir. 2018) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it." (citations omitted)). Fraudulent applications to the EIDL program were unfortunately common. The Court's sentence should show that those who exploit national crises – such as public health emergencies and natural disasters – will face meaningful punishment. Put simply, the sentence imposed by the Court should show that crime does not pay.

*Second*, the sentence imposed should reflect the seriousness of the offense and promote respect for the rule of law. *See* 18 U.S.C. § 3553(a)(1), (2)(A). Cummings committed a serious crime. She made brazen false statements to steal a substantial sum of money from a public program that was designed to help small businesses that would otherwise be forced to shutter because of the pandemic. While Cummings submitted only one fraudulent loan, once she received the loan proceeds, she reaped the benefits of her fraud for months by purchasing likely non-essential items at luxury goods stores, such as Louis Vuitton and Canada Goose.

Although the seriousness of this offense would ordinarily call for a sentence involving a period of incarceration, there are mitigating factors in this specific case that set Cummings apart. Specifically, Cummings helps to care for her ailing mother, who suffered from a severe stroke in 2018, and is the primary caregiver for her teenage son. (Deft's Sentencing Submission at 2). According to the defendant, both rely on Cummings for their day-to-day needs. (*Id.*) Cummings's personal history, including her steady employment history as a cosmetologist and DOE employee and her lack of criminal history, is also mitigating. It suggests that she is less likely to recidivate and therefore makes Cummings a good candidate for a non-incarceratory sentence. Sentencing Cummings to a period of probation, rather than a term of imprisonment, will allow Cummings to continue to her employment and continue her role in caring for her mother and son. In light of the mitigating factors in this case, the Government agrees with the Probation Office and the defense that a sentence without a term of incarceration is appropriate.

However, the sentence that the defendant seeks and that the Probation Office recommends of a term of probation with three months "location monitoring" would be insufficient to serve the goals of sentencing. During her period of pretrial supervision, Cummings has been compliant with supervision and has not shown herself to be a flight risk. Moreover, location monitoring without any restriction on her travel inside the District would serve no punitive purpose. Put simply, three months of location monitoring would not reflect the seriousness of the conduct in this case, where Cummings stole a meaningful sum of money during a global public health crisis, and would not send any message of general deterrence. While Cummings's circumstances are mitigating to an extent, those same mitigating circumstances were also true when she committed her crime, knowing that it would expose her to punishment. Therefore, the Government submits that 12 months of home detention is warranted given the seriousness of the conduct, the need to promote respect for the law, and the need for general deterrence.

### D. Conclusion

For the reasons set forth above, a sentence of two years' probation, with the first 12 months to be served on home detention, would be sufficient, but not greater than necessary, to achieve the purposes of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:    /s/
     Kedar S. Bhatia
     Rebecca T. Dell
     Derek Wikstrom
     Assistant United States Attorneys
     Tel: (212) 637-2465 / 2198 / 1085

Cc:    Aaron M. Goldsmith, Esq. (ECF)